CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

OCT 19 2017

JULIA C. DUDLEY, CLERK
BY: s/ MARTHA L. HUPP
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| DAVID ALLEN HAZELWOOD, ) | |
|     Plaintiff, ) | |
| ) | Civil Action No. 4:16-cv-38 |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | By:    Joel C. Hoppe |
|     Defendant. ) | United States Magistrate Judge |

    Plaintiff David Allen Hazelwood asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 12. Having considered the administrative record, the parties' briefs, and the applicable law, I find that the Commissioner's decision is not supported by substantial evidence. Therefore, I recommend that the Court grant Hazelwood's Motion for Summary Judgment, ECF No. 13, deny the Commissioner's Motion for Summary Judgment, ECF No. 15, reverse the Commissioner's final decision, and remand the case for further administrative proceedings under the fourth sentence of 42 U.S.C. § 405(g).

I. Standard of Review

    The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. *See* 42 U.S.C. § 405(g); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and

1

whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62

(1983); 20 C.F.R. § 404.1520(a)(4). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Hazelwood protectively filed an application for DIB on September 28, 2012, Administrative Record ("R.") 12, ECF No. 9, alleging disability caused by gout in joints, high pretension,[1] and high blood pressure, R. 59. At the time of his alleged onset date of June 1, 2012, he was fifty-eight years old. *Id.* Disability Determination Services ("DDS"), the state agency, denied his claims at the initial, R. 59–65, and reconsideration stages, R. 67–74. On January 23, 2015, Hazelwood appeared with counsel and testified at an administrative hearing before ALJ H. Munday. R. 26–58. A vocational expert ("VE") also testified at this hearing regarding the nature of Hazelwood's past work as a correctional officer. *See* R. 50–57.

ALJ Munday denied Hazelwood's application in a written decision issued on February 9, 2015. R. 12–19. She found that Hazelwood had not engaged in substantial gainful activity since his alleged onset date. R. 14. She then determined that he had severe impairments of gout and hypertension. *Id.* Neither impairment, alone or in combination, met or medically equaled a listing. R. 14–15. As to Hazelwood's residual functional capacity ("RFC"),[2] the ALJ found that he could perform a range of medium work[3] involving occasional climbing of ladders, ropes, or scaffolds; frequent handling or fingering; and occasional exposure to extreme cold, humidity, or wetness. R. 15–18. Relying on this RFC and the testimony of the VE, the ALJ found that

---

[1] The Court presumes that Hazelwood meant "hypertension."

[2] A claimant's RFC is the most he or she can do on a regular and continuing basis despite his or her impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

3

Hazelwood could perform his past work as a correctional officer, both as actually performed and as generally performed in the national economy. R. 18. Therefore, ALJ Munday determined that Hazelwood was not disabled. R. 19.

Following the ALJ's denial of benefits, Hazelwood submitted the medical opinion of his treating physician—generated a week before the ALJ issued her unfavorable decision—to the Appeals Council with his request for review. The Appeals Council noted that it considered this new evidence and added it to the record, *see* R. 290–96, but it denied Hazelwood's request for review because it concluded, without elaboration, that the new evidence did not provide a basis for changing the ALJ's decision. R. 1–5. This appeal followed.

### III. Discussion

Hazelwood poses three challenges on appeal. First, he asserts that the opinion of Paul S. Buckman, M.D., his treating physician, represents new and material evidence that establishes his disability and requires remand so that the Commissioner may weigh this opinion. Pl.'s Br. 6–8, ECF No. 14. Second, he contends that ALJ Munday failed to make a finding of fact as to the physical and mental demands of his past job as required by SSR 82-62. *Id.* at 8–11. Third, he argues that the ALJ made repeated errors of law and fact, as evidenced by her selective reading of the record. *Id.* at 12–14. Because Dr. Buckman's opinion contradicts the ALJ's RFC finding and the Commissioner did not explicitly weigh this evidence, I find that remand is necessary.

A. *ALJ Munday's Opinion and Relevant Medical Evidence*

The thrust of Hazelwood's challenge concerns Dr. Buckman's opinion as to Hazelwood's physical impairments and related functional limitations. Dr. Buckman offered this opinion on February 2, 2015, R. 290–96, one week before ALJ Munday's opinion issued, but it was not

4

presented to the ALJ. ALJ Munday's decision was based entirely on the record before her, and she accurately portrayed and assessed the evidence at that time.

Specifically, ALJ Munday considered the medical evidence, Hazelwood's subjective statements and testimony, and the opinions of the DDS physicians in crafting the RFC. *See* R. 16–18. Hazelwood testified at the administrative hearing that he worked as a corrections officer until June 2012, but he took early retirement because of his rheumatoid arthritis[4] and frequent gout flare-ups. R. 31–32. Hazelwood said that his gout flare-ups used to occur about once a month, but had decreased to every six weeks or so. R. 38–39. Sometimes the gout would affect the ball of his foot, but more than anything it resulted in swelling in both wrists and hands, more on the right than the left. R. 38–40. The flare-ups restricted his lifting and fine motor skills, and he claimed that they sapped his strength in his right hand and fingers, which affected his ability to use his weapon and handle the inmates on a regular and continuing basis. *See* R. 38–41. To combat the gout, Hazelwood took oral medication and occasionally got shots, the combination of which would resolve his symptoms in about two days. R. 40–41. On his bad days, Hazelwood explained that he could not do much more than bathe himself. R. 41–42; *see also* R. 164–71, 183–90.

ALJ Munday found that Hazelwood's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that Hazelwood's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. R. 16. ALJ Munday recited the medical evidence available to her, R. 16–17, which did reveal findings of swollen joints or tenderness in Hazelwood's hands, wrists, or feet after a recent gout flare-up. For example, Hazelwood presented to Dr. Buckman on May 11, 2013,

---

[4] Responding to a question from ALJ Munday, Hazelwood's counsel conceded that no evidence in the available record showed Hazelwood had been diagnosed with any form of arthritis. R. 32–37.

complaining of swelling in both wrists and hands stemming from his history of gout. R. 240. On physical examination, Dr. Buckman observed wrist joint tenderness and bilateral hand swelling, but findings were otherwise normal. R. 241. Dr. Buckman assessed gout, described as acute and moderate, which he treated with Toradol, Depomedrol, Indocin, and colchicine (if the symptoms did not improve). R. 241–42. Other treatment notes in the record reveal similar findings from visits recently following gout flare-ups. *See also* R. 220–22 (December 6, 2012, visit to Venkat R. Neelagiri, M.D., regarding gout in right wrist with tenderness, but no swelling), R. 243–46 (March 27, 2013, visit to Dr. Neelagiri for routine follow-up after gout flare-up with mild swelling in right foot), R. 258–60 (December 3, 2013, visit for gout flare-up with bilateral wrist joint tenderness and swelling and tenderness over right hand and wrist), R. 285–86 (January 9, 2015, visit to Dr. Buckman regarding gout with associated tenderness, but no swelling in bilateral shoulder, elbow, wrist, hip, and knee joints on examination). Conversely, treatment notes from visits that did not recently follow a gout flare-up revealed substantially normal findings. *See, e.g.*, R. 261–62 (June 26, 2013, visit to Dr. Buckman with no recently reported gout flare-up indicating normal findings on physical examination), R. 271–72 (December 26, 2013, visit to Dr. Buckman reporting gout flare-up several weeks prior, but with normal physical examination).

  The ALJ then explained that Hazelwood's subjective statements about the severity of his symptoms "lack[ed] support and consistency with the other evidence of record." R. 17. She noted that his treatment was limited and conservative and had been "relatively effective in controlling his symptoms." R. 17. She also noted that the medical record contained significant gaps in treatment, Hazelwood did not require aggressive or emergency treatment, the physical examinations were "relatively benign," he testified to having more frequent gout flare-ups than

6

he had reported to his physicians, his activities of daily living were more extensive than would be expected given the severity of functional limitations alleged, and "the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." R. 17–18.

She next analyzed the opinions of the DDS physicians. R. 18. On initial review, James Wickham, M.D., found that Hazelwood could lift and carry fifty pounds frequently and twenty-five pounds occasionally and could stand or walk for about six hours and sit for about six hours in an eight-hour workday. R. 62–63. Dr. Wickham found no other limitations and concluded that Hazelwood could perform his past relevant work as a correctional officer. R. 63–64. On reconsideration, Carolina Bacani-Longa, M.D., affirmed all of Dr. Wickham's findings. R. 71–73. ALJ Munday gave these opinions partial weight because she found that additional postural and environmental restrictions were warranted based on Hazelwood's testimony. R. 18. ALJ Munday then used this RFC and the testimony of the VE to conclude at step four that Hazelwood could perform the requirements of his past relevant work as a corrections officer, and as such, was not disabled. R. 18–19.

B.     New and Material Evidence

   1.     Dr. Buckman's Opinion

On February 2, 2015, Dr. Buckman completed an "Arthritis Residual Functional Capacity Questionnaire" addressing Hazelwood's physical impairments and related functional abilities.. R. 290–96. He noted that he had treated Hazelwood since May 2013 and that he diagnosed Hazelwood with gout and joint pain. R. 290. Hazelwood's pain and stiffness, primarily in his wrist, negatively affected his functioning. *Id.* Dr. Buckman identified reduced range of motion in the wrist and hip, joint warmth, reduced grip strength, tenderness, redness, and swelling as

positive objective signs supporting his opinion. R. 291. He did not think Hazelwood was a malingerer, and he believed that the impairments had lasted or could be expected to last at least twelve months. R. 291–92. Dr. Buckman opined that Hazelwood could stand or walk for about two hours and sit for about two hours in an eight-hour workday; could occasionally lift ten pounds or less and rarely lift twenty pounds, but nothing more; could rarely stoop (bend) and crouch, but never twist or climb ladders or stairs; and could never use his arms, hands, and fingers to perform "repetitive activities" like grasping, twisting, and turning objects, reaching overhead, and manipulating small items. R. 292–95. As a result, Hazelwood would have good days and bad days and would likely miss more than four days of work per month. R. 295.

    2.    *Analysis*

Hazelwood argues that Dr. Buckman's opinion, "if credited, clearly establishes [his] disability." Pl.'s Br. 6. He analogizes this case to the Fourth Circuit's decision in *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011), and contends that here, like the claimant in *Meyer*, he presented contradictory evidence from a treating physician to the Appeals Council—which it considered and made part of the record—that directly filled a gap addressed by the ALJ in denying benefits. *Id.* at 7–8. Hazelwood asserts that because the ALJ did not have the benefit of Dr. Buckman's medical opinion and the Appeals Council failed to explain its conclusion that the new opinion did not provide a basis for changing the ALJ's decision, remand is necessary to allow the appropriate factfinder to explicitly weigh the new evidence. *Id.*; *see* R. 1–2. The Commissioner, conversely, claims that the Appeals Council did not have to articulate a reason for denying Hazelwood's request for review and that regardless, Dr. Buckman's opinion is not both new and material so as to warrant remand. Def.'s Br. 9–12, ECF No. 16. Hazelwood has the better position.

In deciding whether to grant or deny review, the Appeals Council must consider any additional evidence that is new, material, and related to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b) (2016). "Evidence is 'new' if it is not duplicative or cumulative, and is material 'if there is a reasonable possibility that the new evidence would have changed the outcome.'" *Davis v. Barnhart*, 392 F. Supp. 2d 747, 750 (W.D. Va. 2005) (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc)). The regulation in effect when the Appeals Council denied Hazelwood's request required the Appeals Council to grant review "if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record," including any new and material evidence that it was required to consider. 20 C.F.R. § 404.970(b) (2016).

Here, the Appeals Council incorporated Dr. Buckman's opinion into the record, R. 5, and, in denying Hazelwood's request for review, noted that it "considered" this evidence, but found "that the additional evidence does not provide a basis for changing the [ALJ's] decision," R. 2. The Appeals Council offered no explanation for this finding, *see id.*, as is its prerogative, *see Meyer*, 662 F.3d at 705 ("[N]othing in the Social Security Act or regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review."). Under such circumstances, this Court must review the entire record, including the additional evidence, to determine whether substantial evidence supports the ALJ's underlying factual findings. *Meyer*, 662 F.3d at 704; *Riley v. Apfel*, 88 F. Supp. 2d 572, 577 (W.D. Va. 2000). This can be a difficult task where, as here, the Appeals Council did not explain why the additional evidence did not render the ALJ's "action, findings, or conclusion . . . contrary to the weight of evidence" now in the record. *See Riley*, 88 F. Supp. 2d at 579–80.

A federal court reviewing the Commissioner's final decision is not permitted to make factual findings or attempt to reconcile new evidence with conflicting and supporting evidence in the record. *See Meyer*, 662 F.3d at 707. Courts instead maintain the appropriate balance by reviewing the entire record to determine if there is a "reasonable possibility" that the additional evidence would change the Commissioner's final decision that the applicant is not disabled. *See, e.g., Brown v. Comm'r of Soc. Sec.*, 969 F. Supp. 2d 433, 441 (W.D. Va. 2013). Remand is required where "the new evidence 'is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports,'" *Sherman v. Colvin*, No. 4:13cv20, 2014 WL 3344899, at *10 (W.D. Va. July 8, 2014) (quoting *Dunn v. Colvin*, 973 F. Supp. 2d 630, 642 (W.D. Va. 2013)), or where it undermines the ALJ's factual findings and rationale or fills an "evidentiary gap [that] played a role in [the ALJ's] decision" to deny benefits, *Meyer*, 662 F.3d at 707; *cf. Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (ordering remand where evidence submitted to, but not considered by, the Appeals Council "contradict[ed] both the ALJ's findings and underlying reasoning" for denying Jackson's claim and "reinforced the credibility of Jackson's testimony").

Here, Dr. Buckman's medical opinion both contradicts the evidence of record and fills a gap addressed by the ALJ. In analyzing Hazelwood's credibility, ALJ Munday specifically explained that she found his statements "not entirely credible" in part because "the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." R. 18. Dr. Buckman, as a treating physician, provided an opinion that fits this mold. Moreover, the significant exertional limitations identified in Dr. Buckman's opinion contradict ALJ Munday's RFC finding that Hazelwood can perform medium work. Dr. Buckman opined that Hazelwood's

10

gout and arthralgias would limit him to performing less than light work. Dr. Buckman's more limited functional assessment would preclude Hazelwood from performing his past work as a corrections officer.

This scenario is similar to *Meyer* where the ALJ found the claimant not disabled and emphasized that no treating physician had addressed the extent of the claimant's restrictions. 662 F.3d at 703. There, like here, the Appeals Council added the evidence to the record, but denied review without an explanation. *Id.* at 704. On appeal, the Fourth Circuit noted that the additional evidence addressed the gap identified by the ALJ and it conflicted with other evidence the ALJ had relied on in making his decision. *Id.* at 707. Acknowledging that it was not within the court's province to resolve evidentiary conflicts, the Fourth Circuit determined that remand was necessary as the agency had not explained how the new evidence impacted Meyer's claim. *Id.* Because the facts here square with those in *Meyer*, Hazelwood's claim must be remanded to allow the Commissioner to weigh the new evidence.

Nonetheless, the Commissioner makes two arguments in defense of her position: specifically, that the Appeals Council need not explain its rationale for denying a request for review and that Dr. Buckman's opinion was not both new and material. Neither argument is persuasive. The Commissioner is correct that the regulations "do not require the Appeals Council to articulate its rationale for denying a request for review." Def.'s Br. 9 (quoting *Meyer*, 662 F.3d at 705–06). That said, the task of *weighing* this conflicting evidence in the first instance is beyond the scope of this Court's review. *See, e.g.*, *Kersey v. Astrue*, 614 F. Supp. 2d 679, 693 (W.D. Va. 2009) ("[I]t is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein."). The Appeals Council's decision not to explain how it weighed Dr. Buckman's treating-source medical opinion against

all of the evidence in the current record does not shift that task to this Court. *See Thomas v. Comm'r of Soc. Sec.*, 24 F. App'x 158, 162 (4th Cir. 2001).

The Commissioner's second argument is also unavailing. The Commissioner contends that because the Appeals Council considered Dr. Buckman's opinion and still denied Hazelwood's request for review, it affirmatively concluded that the new evidence was not material. *See* Def.'s Br. 10. This argument confuses the standards applied by the Appeals Council. The Appeals Council must *consider* evidence that is new, material, and related to the relevant period in determining whether to grant a request for review, but it will only *grant* such a request "if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record," including any new and material evidence that it was required to consider. 20 C.F.R. § 404.970(b) (2016). Here, the Appeals Council considered Dr. Buckman's medical opinion and added it to the record, but it did not explain why it concluded that the opinion did not provide a basis for changing the ALJ's decision. Without an explanation, however, this Court cannot engage in meaningful review of the Commissioner's final decision, which is essential given the obviously probative and contradictory nature of the new evidence.[5] *See Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977).

---

[5] The Commissioner also claims that Dr. Buckman's opinion that Hazelwood could not perform light or medium work would not have changed the ALJ's decision, and was thus not material, because it was inconsistent with the other objective evidence, including Dr. Buckman's own treatment notes. Def.'s Br. 11. Neither the ALJ nor the Appeals Council, however, expressed this line of reasoning in evaluating the opinion evidence, and as such, it cannot be utilized by the Court to affirm the Commissioner's final decision. *See Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015) (per curiam) (explaining that it is not the Court's role "to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record"); *McGuinness v. Colvin*, Civil No. 13-1573, 2014 WL 4854857, at *10 (D. Md. Sept. 29, 2014) ("Despite the Commissioner's arguments, the Court 'may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.'" (quoting *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007)).

Similar cases from this District have approached this situation in the same manner. In *Tanner v. Astrue*, the DDS experts recommended that the claimant undergo a mental consultative examination, which was performed prior to the ALJ's opinion, but was not addressed in the decision, and the Appeals Council subsequently declined review without explanation. No. 5:10cv84, 2012 WL 1069161, at *5 (W.D. Va. Mar. 29, 2012). On appeal, the court held that because no other similar report existed in the record, there was a reasonable possibility that it might have impacted the ALJ's opinion, and thus it ought to have been considered by the Commissioner, but could not be weighed by the court. *Id.* at *5–6. In *Ridings v. Apfel*, newly submitted evidence called into question the ALJ's finding that the claimant did not have a severe back impairment. 76 F. Supp. 2d 707, 709–10 (W.D. Va. 1999). Because the Appeals Council denied review without explanation, the court remanded the Commissioner's decision rather than attempt to weigh the new evidence. *Id.* at 710. In *Farley v. Astrue*, new findings from shortly after issuance of the ALJ's opinion identified latent mental impairments that showed the claimant suffered from more severe problems than those considered by the ALJ. No. 7:11cv263, 2012 WL 1108706, at *3 (W.D. Va. Mar. 30, 2012). Because no factfinder had determined the extent of the impact these impairments had on the claimant's nonexertional limitations, the court could not determine whether substantial evidence supported the ALJ's decision and remand was necessary. *Id.* at *4–5.

In sum, a reasonable possibility exists that Dr. Buckman's medical opinion could change the ALJ's decision. His opinion addresses a gap specifically identified by ALJ Munday, and it contains conclusions directly at odds with the articulated RFC. This lack of factfinding by the agency requires remand. Certainly, this shortcoming does not fall on the ALJ, who did not have the benefit of viewing this report and whose account, at the time, accurately portrayed the entire

record. *See Farley*, 2012 WL 1108706, at *2 (explaining that remand was necessary even though the ALJ gave "full and fair consideration to all of the evidence developed as of the time of [his] opinion"). To be sure, the Appeals Council is under no obligation to elaborate on its decision to deny a claimant's request for review, even when considering new evidence. *Meyer*, 662 F.3d at 705. But the Appeals Council must exercise this discretion while recognizing the challenges it causes for the Court's review of the Commissioner's final decision. *See Thomas*, 24 F. App'x at 162; *Riley*, 88 F. Supp. 2d at 580 ("[T]he agency leaves itself open to criticism when no explanation regarding material evidence within the record is provided."). If it chooses not to explain itself in spite of new evidence that presents a reasonable possibility of changing the outcome, "this court is left in the dark as to how the Appeals Council treated the new evidence," which makes "a meaningful judicial review . . . impossible." *Riley*, 88 F. Supp. 2d at 579–80. Therefore, remand is necessary for the Commissioner to fulfill her role as factfinder by weighing the new evidence contained in Dr. Buckman's medical opinion.

On remand, the Commissioner must conduct a review of the entire record inclusive of the new evidence. *See Thomas*, 24 F. App'x 162–63; 20 C.F.R. § 404.983 (2017). In doing so, she must also analyze whether Hazelwood can return to his past relevant work. Although the claimant bears the burden of persuading the Commissioner that he cannot perform his past work "either as [he] actually performed it" or as it is "generally performed in the national economy," *Goodman v. Astrue*, 539 F. Supp. 2d 849, 850 (W.D. Va. 2008) (citing 20 C.F.R. § 404.1560(b)), the ALJ must make specific findings as to the physical and mental demands of the claimant's past work and discuss whether the person's RFC would permit him to return to the past job or occupation, *Prim v. Astrue*, No. 7:07cv213, 2008 WL 444537, at *6 (W.D. Va. Feb. 13, 2008); *Woody v. Barnhart*, 326 F. Supp. 2d 744, 749–51 (W.D. Va. 2004); SSR 82-62, 1982 WL 31386,

at *3 (Jan. 1, 1982) ("[W]hether the claimant retains the functional capacity to perform past work . . . must be developed and explained fully in the disability decision.").

## IV. Conclusion

For the foregoing reasons, I find that substantial evidence does not support the Commissioner's final decision. Accordingly, I respectfully recommend that Hazelwood's Motion for Summary Judgment, ECF No. 13, be **GRANTED**, the Commissioner's Motion for Summary Judgment, ECF No. 15, be **DENIED**, the Commissioner's final decision be **REVERSED** and **REMANDED** for further administrative proceedings under the fourth sentence of 42 U.S.C. § 405(g), and this case be **DISMISSED** from the Court's active docket.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: October 19, 2017

Joel C. Hoppe
United States Magistrate Judge